WILLIAM KELLY MILLING COMPANY, Appellant, v. STRAND BAKING COMPANY, Appellee.

No. 40798.

DECEMBER 17, 1931.

Bryant & Bachman, for appellant.

W. D. Kearney, for appellee.

GRIMM, J.—In May, 1929, the plaintiff brought a suit at law in the District Court of Marshall County, Iowa, seeking to recover from the defendant approximately $2,500.00.

It is claimed that on or about the 3rd day of July, 1928, the William Kelly Milling Company of Hutchinson, Kansas, which hereinafter for brevity will be called the "milling company", sold to the defendant, the Strand Baking Company of Marshalltown, Iowa, which will hereinafter be referred to for brevity as the "baking company", two thousand barrels of "Craftsman Flour" at $6.20 per barrel. The sale was by written contract forwarded to the milling company by their traveling salesman and by them accepted. There were some extensions in reference to the time of delivery.

It is alleged that two shipments under the contract were delivered and paid for and the balance refused.

The defense is, in substance, predicated upon the defective quality of the flour. It is the claim that this defective quality was discovered on the first shipment, and the plaintiff was

promptly notified. An expert from the milling company appeared at the plant of the baking company and endeavored to discover what was wrong. Finally, it was agreed orally that a second shipment should be made, upon the quality of which the entire transaction should depend. The second shipment was worse than the first, and the defendant denies any liability whatsoever. The case was tried to the court as an action at law without a jury, and the court found for the defendant. The plaintiff appeals.

The various errors relied upon for reversal may be grouped as follows:

1. The question of the quality of the flour of the first shipment.

2. The question whether the flour was accepted by the defendant.

3. The question of an oral agreement in reference to the second shipment, and finally the question of the quality of the second shipment.

I. It is contended by the milling company that the baking company accepted and paid for the two shipments of the flour. The written contract provided on the question of payment as follows: "Terms of payment—arrival draft with bill of lading attached."

Manifestly, under such a contract, when a shipment was made to the baking company, it could not get the flour without taking up the draft to which the bill of lading was attached. It could not know the quality of the flour until it had taken it into its plant and tried it out. It is true that the baking company received the first shipment, but it by no means follows that it accepted it as flour of the quality purchased.

The court correctly found that taking up the draft attached to the bill of lading was not an acceptance of either that particular shipment or of the goods specified in the contract.

II. The record abounds in evidence that the flour did not produce satisfactory results in the baking company's plant. It is not contended that the plant is not modern and efficiently equipped and operated.

When the plaintiff was notified by the defendant that it was unsuccessful in using the flour, an expert representative of the

milling company was sent to Marshalltown in order to ascertain, if possible, the trouble.

It satisfactorily appears that every facility of the plant was placed at his disposal and that he too was unable to secure satisfactory results.

Upon the evidence in the record, the court was entirely warranted in finding that the first shipment of flour was not of a proper quality for the purposes for which it was sold.

III. While the experiments were going on at the baking company's plant in Marshalltown with the first shipment of flour, telephone communications were had with the milling company's home office at Hutchinson, Kansas. A representative of the milling company was in the office of the baking company at the time of some of these communications over the telephone and participated in them.

It is the claim of the defendant that at that time it was orally understood and agreed by and between the parties hereto that a second special shipment of flour should be made to the baking company and the entire transaction should depend upon the results of a test of this second shipment. The milling company urged this arrangement in an effort to induce the baking company to accept the flour.

The second shipment arrived, and, as we understand the record, it also arrived with draft attached to the bill of lading, necessitating payment of the goods by the baking company before it could test the flour. A thorough test was made of this second shipment, and it too proved entirely unsatisfactory.

No good purpose could be served by quoting from the evidence. It abundantly appears that there was sufficient evidence in the record to warrant the court, sitting as a jury, to find that the flour in both of the shipments was not of a merchantable quality and could not be satisfactorily used by the baking company.

There is abundant evidence in the record to warrant the trial court in finding that the oral contract hereinbefore referred to was made, and that the milling company failed in its attempt to furnish flour of the quality included in the contract. Having thus found, it necessarily followed that the baking company owed the plaintiff nothing.

It follows the cause must be, and is,—Affirmed.

FAVILLE, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.